UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

_____

GEORGE MOORE                              :
349 Orchard Road                          :
Millerstown, Pennsylvania  17062          :
    Plaintiff                             :
                                          :
    v.                                    :
                                          :
COMMONWEALTH OF PA                        :
225 Main Capital Building,                :
Harrisburg, PA 17120                      :
    and                                   :
PENNSYLVANIA OFFICE OF THE                :
ATTORNEY GENERAL                          :    CIVIL ACTION
Torts Litigation Unit                     :
15th Floor, Strawberry Square             :
Harrisburg, PA 17120                      :
    and                                   :    JURY TRIAL DEMAND
KATHLEEN KANE                             :
Office of the Attorney General,           :
16th Floor, Strawberry Square             :
Harrisburg, PA 17120                      :
    and                                   :
JONATHAN DUECKER                          :
Office of the Attorney General,           :
16th Floor, Strawberry Square             :
Harrisburg, PA 17120                      :
    and                                   :
CHARLES ARDO                              :
Office of the Attorney General,           :
16th Floor, Strawberry Square             :
Harrisburg, PA 17120                      :
    Defendants.                           :
_____:

1

## COMPLAINT

## I.    INTRODUCTION

1.    Plaintiff, George Moore, was terminated from his position as an HR Analyst IV at the Office of Attorney General (OAG) in retaliation for his recommendation, following an intensive internal investigation, that OAG Chief of Staff Jonathan Duecker be fired for having engaged in a pattern of sexual harassment in violation of the federal and state civil rights of OAG employees.

2.    Plaintiff's recommendation that Deucker be terminated for sexual misconduct was a good faith report of wrongdoing or waste within the meaning of the Pennsylvania Whistleblower Law, 43 P.S. § 1421 *et seq.*

3.    Defendants terminated Plaintiff because of his good faith report of wrongdoing and in retaliation for his recommendation that Defendant Deucker be terminated for sexual harassment that violated OAG policy and federal and state laws.

4.    Prior to his termination, Plaintiff Moore enjoyed a distinguished career in both public and private service, including receiving an honorable discharge from the United States Army in 1995, serving a five year term as President of the United Government Security Officers of America Union and serving as a Labor Relations Coordinator for the Department of Public Welfare for three years prior to his hire by the OAG.

5.     At the time of his termination, Plaintiff had a constitutionally protected liberty interest in his good name, honor and reputation.

6.     Following Plaintiff's discharge the OAG issued a press release which, on information and belief, was approved by Attorney General Kathleen Kane, Chief of Staff Jonathan Duecker and Press Secretary Charles Ardo in which it was asserted that Mr. Moore was "fired for cause."

7.     The statements made by Kane, Duecker and Ardo were sufficiently derogatory so as to injure Plaintiff's good name and reputation.

8.     The press release was inaccurate, intentionally or recklessly false, was intended to subject Plaintiff to public embarrassment and humiliation and was per se defamatory.

9.     There was no probable cause sufficient to support the statement.

10.    Plaintiff was not afforded any due process protections prior to being fired or prior to Defendants publication of the false and defamatory statement that he was "fired for cause".

11.    Plaintiff's reputation has been harmed by his termination, and by the many articles in newspapers and online publications and republications of the defamatory statements made by Defendants.

12.     Defendants further compounded the defamatory meaning of the "spin" given to his termination by publishing to the press, and thus the public at large, that contemporaneous with his termination he was "escorted from the OAG building".

13.     Plaintiff seeks relief under 43 P.S. § 1421 *et seq.*, the Pennsylvania Whistleblower Law, and 42 U.S.C. § 1983 for a violation of his rights guaranteed to him under the due process clauses of the Fourth and Fourteenth Amendments of the United States Constitution.

14.     Plaintiff has also filed a charge of discrimination under Title VII, 42 U.S.C. § 2000(e) *et seq.* and the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* relating to his retaliatory discharge. Plaintiff will amend this complaint to include causes of action under Title VII and the PHRA when administrative remedies have been exhausted.


## II.     PARTIES, JURISDICTION AND VENUE

15.     Plaintiff George Moore is an adult male citizen of the United States who resides at the above captioned address.

16.     Defendant Commonwealth of Pennsylvania has its principle offices located at the above captioned address. Defendant Commonwealth is an "Employer" within the meaning of 43 P.S. § 1421 *et seq.*

17.     Defendant Pennsylvania Office of the Attorney General ("OAG") is the law enforcement branch of the Commonwealth of Pennsylvania, located at the above captioned address. OAG is an "Employer" for purposes of 43 P.S. § 1421 *et seq.*

18.     The Commonwealth and the OAG were joint employers of Plaintiff.

19.     Plaintiff at all relevant times was an employee within the meaning of 43 P.S. § 1421 *et seq.*

20.     At all relevant times and currently, defendant Kathleen Kane has been the Attorney General for the Commonwealth of Pennsylvania. She is sued individually and in her official capacity. Defendant Kane is an "Employer" for purposes of 43 P.S. § 1421 *et seq.*

21.     At all relevant times and presently, defendant Jonathan Duecker has been an OAG employee. He was promoted to the position of Chief of Staff in June 2014. Prior to his promotion he served in the position of Special Agent in Charge of the Bureau of Narcotics Investigations and Drug Control. He is sued individually and in his official capacity. Defendant Duecker is an "Employer" for purposes of 43 P.S. § 1421 *et seq.*

22.     Defendant Charles "Chuck" Ardo was hired as Attorney General Kane's Press Secretary in April 2015. He is sued as an individual and not in his official capacity.

23.    At all times relevant to this action, Defendants, and each of them, acted within the scope of their authority and were acting under color of law.

24.    This action is brought under the 42 U.S.C. § 1983 and this Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. This court has supplemental jurisdiction of Plaintiff's claims under 43 P.S. § 1421 *et seq.* pursuant to 28 U.S.C. § 1367.

25.    Venue is appropriate in this judicial district because at all times material to this complaint Plaintiff resided and worked for the OAG in this judicial district and the material acts and omissions giving rise to this action occurred in this judicial district.

### III.    ALLEGATIONS OF FACT

26.    Plaintiff worked as a Labor Relations Coordinator in the Department of Public Welfare from 2010 until October 2013, when he was hired by the OAG as an HR Analyst III.

27.    He was an outstanding employee throughout his employment at the OAG.

28.    In July 2014, Plaintiff was rated "Outstanding" overall – the highest available rating – "Outstanding" in five of the six performance categories, and "Commendable" the next highest rating, in the sixth.

29.     The July 2014 evaluation was the only written performance evaluation plaintiff received during his employment at the OAG.

30.     In June 2014, Plaintiff met with David Tyler, the Attorney General Chief of Staff, Ms. Nicole Kreiser, the Human Resources Director, and Will Otto, the Director of Management Services.

31.     During this meeting, it was agreed that Plaintiff would receive four pay raises and two promotions over the next fourteen months.

32.     The first of the two promotions occurred in September 2014 when Plaintiff was promoted to HR Analyst IV; the next promotion was scheduled to occur in September 2015 when Plaintiff would be promoted to HR Analyst V.

33.     These raises and promotions were agreed upon based on the salary of the individual Plaintiff replaced, Plaintiff's work performance at the OAG, and in order to persuade Plaintiff to remain at the OAG rather than accepting a position that he had been offered by the Department of Public Welfare.

34.     Bruce Beemer, the First Deputy Attorney General, ratified the promotional and compensation agreements that were made with Plaintiff.

35.     As an HR Analyst IV, Plaintiff's duties included investigating allegations of sexual harassment.

36.    Plaintiff had prior experience in conducting investigations of sexual harassment in his previous position as a Labor Relations Coordinator at the Department of Public Welfare.

37.    In the second week of April 2015, Plaintiff was asked by Chad Ellis, Chief Inspector for the Office of Professional Responsibility (OPR) to participate in an investigation into allegations of sexual harassment that had been made against Jonathan Duecker, who was then Special Agent in Charge of the Bureau of Narcotics Investigations and Drug Control for the OAG.

38.    OPR generally investigates allegations of professional misconduct that are alleged against employees of the Commonwealth.

39.    Plaintiff agreed to participate in the investigation that was being conducted by OPR inspector William Nickoles.

40.    An investigation of sexual harassment allegations that are made against an employee of the OAG may be handled by the Human Resources department of the OAG because that department has expertise in EEO matters.

41.    Anita Robinson, the EEO Compliance Officer at the OAG generally participates in sexual harassment investigations.

42.    However, the investigation into Defendant Duecker's harassment had been conducted by OPR and had been initiated there because of an unrelated misconduct investigation.

43.   Plaintiff was told by Chad Ellis that he was being brought in to the investigation because the OPR wanted participation from the Human Resources department due to the nature of the allegations.

44.   Mr. Ellis also told Plaintiff that Ms. Robinson would not participate in the investigation.

45.   In its initial investigation of Defendant Duecker OPR had interviewed two complainants Deputy Attorney General Michele Kluk and Narcotics Agent Cynthia Pugh, both of whom alleged that they had been sexually harassed by Defendant Duecker.

46.   Ms. Kluk alleged that Defendant Duecker physically assaulted her three times while they were patrons at Damon's Bar & Grill in Hazelton, PA on February 18, 2014.

47.   The assaults consisted of Defendant Duecker running his hand through her hair, running his finger up her back under her shirt, and running his finger up her calf and thigh after she had made it clear that she did not want him touching her.

48.   The physical assaults on Ms. Kluk were corroborated by agents who witnessed the assaults.

49.   Ms. Pugh stated that the Mobile Street Crimes Unit had a Christmas party at the house which was rented by the OAG for their assignment in Hazleton.

50.     Ms. Pugh explained that Defendant Duecker "hit on her" at a Christmas Party, at which point she got up and retired to a bedroom.

51.     Sometime after Ms. Pugh fell asleep, Defendant Duecker came into her bedroom.

52.     When Pugh awoke in the middle of the night, Defendant Duecker was standing over her bed, which was "creeping her out."

53.     She asked him what he wanted, in which he stated that he wanted to tell her he was leaving.

54.     Ms. Pugh was so frightened that after he left, she checked every room in the house, to ensure that he was not still in the house, and reported the incident to Narcotics Agent John Brennan and then to her supervisors in January 2015.

55.     OPR Inspector Nickoles did not schedule Defendant Duecker for to be interviewed in connection with these allegations.

56.     Plaintiff agreed with the decision not to interview Defendant Duecker because: There was sufficient evidence, including the corroboration of third-party agent-witnesses, for a finding of sexual harassment without speaking with him and because Defendant Duecker was infamous for engaging in retaliation.

57.     Because of Defendant Duecker's well-known history of vindictiveness Plaintiff was concerned that the complainants and third-party witnesses would be put at risk.

58.    In making the determination not to interview Defendant Duecker Plaintiff spoke with Jay Gasdaska, the Director of the Bureau of Labor Relations at the Office of Administration, who agreed with his concerns and decision.

59.    Plaintiff believed that Defendant Duecker would be terminated as a result of his sexual harassment findings and would therefore have no opportunity to harass the complainants or the witnesses.

60.    Some of the acts of retaliation of which Plaintiff is aware include: Defendant Duecker targeting Tim Deery, a seventeen year veteran Narcotics Agent at the OAG, for a demotion, initiating an OPR investigation of him, and berating him in front of a group of OAG employees. This was done without having established a factual record of cause.

61.    In addition, Defendant Duecker violated policy by conducting an investigation of Tim Deery rather than simply reporting the incident to the OPR.

62.    By not following set policy and protocol, Defendant Duecker endangered two other agents along with Mr. Deery.

63.    Defendant Duecker also targeted Supervisory Narcotics Agent Jerome Smith by making him an "Administrative Agent."

64.    Defendant Duecker pulled Agent Smith from field work when he determined that Agent Smith did not support him.

65.    Defendant Duecker reassigned Agent Smith's subordinates and had him do clerical work and office management.

66.    The OAG does not have a classification of an "Administrative Agent"; Defendant Duecker created this classification without Human Resources knowledge or approval.

67.    Defendant Duecker also targeted Special Agent-in-Charge Kevin Wevodau on several occasions, including: Hiding office equipment that belonged to Mr. Wevodau's section and prompting an employee (Becky Berkebile) to file an unsupported complaint against Mr. Wevodau.

68.    Upon information and belief, Defendant Duecker also informed Defendant Kane that Mr. Wevodau was not a team player and that he had Ms. Berkebile's complaint filed against him, prompting the Attorney General to ask Mr. Wevodau for his resignation in lieu of termination.

69.    In addition, Defendant Duecker has had several confrontations either in person or through emails in which he has bullied employees into breaking policy, demeaned and yelled at employees in front of others, or otherwise handled himself in an unprofessional manner.

70.    At the conclusion of the OPR investigation into Defendant Duecker's sexual harassment of subordinate employees, Chad Ellis provided Defendant Kane with the OPR reports of Defendant Duecker's sexual harassment case.

71.     Defendant Kane asked Mr. Ellis what Ms. Kluk and Ms. Pugh "would need to make this go away".

72.     She then told Mr. Ellis that she "needed" Defendant Duecker and would not terminate him.

73.     In mid-April, approximately a week after Mr. Ellis provided the reports to Defendant Kane, Mr. Ellis called Plaintiff and told him that Defendant Duecker asked him if the report regarding his sexual harassment could "die on the vine."

74.     Accordingly, Defendant Duecker had already been provided with the investigation documents by Attorney General Kane.

75.     On April 22, 2015, Plaintiff submitted a recommendation to Bruce Beemer, the First Deputy Attorney General, calling for Defendant Duecker's termination for violating the OAG's Sexual Harassment Policy and in violation state and federal laws.[1]

76.     Specifically, the recommendation was based on ***"a pattern of sexual misconduct, targeting a subordinate, and showing an abuse of power."***

77.     On April 22nd or 23rd, 2015, there was an announcement that Defendant Duecker had become the Chief of Staff for the OAG.

---

[1] A true and correct copy of plaintiff's recommendation is attached as Exhibit A.

13

78.    When he became the Chief of Staff Defendant Duecker changed the hierarchical reporting structure, thereby replacing the First Deputy as Plaintiff's top level supervisor in the chain of command at the OAG.

79.    This is significant because no one in Plaintiff's original chain of command had any issues with his work performance.

80.    Plaintiff was told in late April or early May 2015 that Defendant Kane said she believed that Plaintiff leaked Grand Jury information about the Harrisburg Incinerator case.

81.    Plaintiff did not "leak" any Grand Jury information.

82.    Plaintiff did not even have access to any Grand Jury material in that matter, which the Attorney General knew or reasonably should have known.

83.    On April 30, 2015, Defendant Kane asked Larry Moran, legal representative for the Fraternal Order of Police (FOP) what it would take to make Ms. Pugh's case go away, as she needed Defendant Duecker and could not let him go.

84.    She told Mr. Moran that if the FOP would "make this go away" she could get them a favorable contract and reinstate Tom Sedor, a Narcotics Agent out of the Allentown Regional Office.

85.    In May 2015, Plaintiff was told that Defendant Kane asked Mr. Moran and Melissa Weber, another FOP legal representative, for a letter from the FOP stating that Defendant Duecker had not done anything wrong and that they supported him

as Chief of Staff, in return for which the FOP would be ensured a favorable collective bargaining agreement.

86.     Plaintiff was told that the FOP Executive Board voted not to provide such a letter of support.

87.     On May 15, 2015, Will Otto, Director of Management Services, forwarded Plaintiff an email from Defendant Duecker in which Defendant Duecker states that discussions related to contract negotiations with the FOP are to cease until further direction from him.

88.     On June 17, 2015, Plaintiff had a three hour meeting with Defendant Duecker during which he berated Plaintiff, he told Plaintiff that he was not qualified to do his job because he was not an attorney, that he was not qualified to conduct investigations because he does not have a gun and badge, that he had not conducted a proper investigation into the allegations of sexual harassment that had been made against him [Duecker], that no one in the office has confidence in HR out of fear of information being leaked, that no one on the 14th Floor knows what it is Plaintiff does, and that Plaintiff was "either with him or against him".

89.     On June 23, 2015, Plaintiff was asked to meet with Chad Ellis in his office at 10:00 a.m.

90.     Mr. Ellis asked Plaintiff if he leaked an email Defendant Duecker sent to Mr. Otto and Ms. Kreiser regarding the revised chain of command in the Office since Defendant Duecker became Chief of Staff.

91.     Plaintiff had never seen the email, much less leaked it and so informed Ellis.

92.     Ellis then asked if Plaintiff had met with Angela Couloumbus, a journalist at the Philadelphia Inquirer; Plaintiff had not and so informed Ellis.

93.     Next Ellis asked if Plaintiff had directed Special Agent-in-Charge Kevin Wevodau to call Ms. Couloumbus; Plaintiff had not and so informed Ellis.

94.     The next day, June 24, 2015, Plaintiff was summoned to a meeting with Ms. Kreiser and Mr. Otto and told that the Attorney General was "going in a different direction."

95.     When Plaintiff asked why Mr. Otto stated that he was not authorized to provide any further information.

96.     Mr. Otto then stated that "this is not right."

97.     Plaintiff was terminated by Defendant Kane and Defendant Duecker in retaliation for his finding that Duecker had sexually harassed OAG employees and his consequent recommendation that Duecker be terminated for that misconduct.

98.     Plaintiff has suffered damages in the form of past and future wage loss, damage to his reputation, embarrassment and humiliation all to his great detriment and loss.

99.    Plaintiff was set for a substantial raise and promotion starting September 1, 2015.

100.   There have also been numerous newspaper articles stating that Plaintiff was escorted from the OAG building and terminated "for cause," including:

    a. An article published June 24, 2015 on Pennlive.com stating Plaintiff was escorted out of the building when he was terminated,

    b. an article on Philly.com, the Philadelphia Inquirer's website, published June 26, 2015 stating that Plaintiff was terminated as the result of a "personnel issue" – which statement being attributed to Defendant Ardo.

    c. an article published June 27, 2015 on TribLive.com referring to Plaintiff's termination, and

    d. an article published July 17, 2015 on standardspeaker.com in which defendant Ardo is quoted as stating that Plaintiff was fired "for cause."

101.   Defendant Ardo, was acting as Defendant Kane's agent when he stated that Plaintiff was fired for cause.

102.   Plaintiff was not fired "for cause."

103.   Upon information and belief, Defendant Ardo and/or unknown agents of Defendants made the defamatory statement published in the June 24, 2015 article on pennlive.com that Plaintiff was "escorted out of his 14th Floor office."

104.   Plaintiff's termination, including the manner of his termination and statements Defendants made to the media about his termination, has caused other Commonwealth employees to view him with suspicion and distrust.

105.   For instance, Karl Hoffman, the Supervisor of the Program Management Unit at the Department of Human Services wrote an email to other Commonwealth employees on June 25, 2015 stating, "Perhaps we need to restrict George from playing volleyball, since we play on state property. . . We need to address this with the rest of the Steering Committee, since he was escorted off Commonwealth property."

106.   Mr. Hoffman then posted a link to the article on pennlive.com published June 24, 2015 showing Plaintiff was escorted from the building in connection with his termination.

107.   Plaintiff's termination, escorting him from the building, informing the press that he was escorted from the building and telling the press that he was fired "for cause" created a false and defamatory impression about Plaintiff and caused him great embarrassment and humiliation.

## CLAIMS FOR RELIEF

### COUNT I
### Plaintiff v. Kane, Duecker and Ardo in their individual capacities
### 42 U.S.C. § 1983

108. Plaintiff incorporates by reference the preceding paragraphs of this complaint as if set forth fully and at length.

109. As described above, the Defendants defamed Plaintiff's skills in his chosen profession, terminated his employment purportedly for cause, and have since published reports to others that his termination was for cause and that he was escorted from the building in connection with his termination.

110. The manner Plaintiff was terminated coupled with statements made by Defendants that he was escorted from the building and fired for cause suggest immoral activity.

111. Plaintiff did not engage in any immoral activity as was suggested by Defendants' actions and publications.

112. Plaintiff's reputation was damaged in the course of his termination, which deprived him of his present and future employment with the OAG.

113. Defendants' violated Plaintiff's Fourteenth Amendment due process liberty interest in his reputation.

114. Plaintiffs' due process liberty interest in his reputation is a clearly established right.

115.   The Defendants never conducted a hearing on the charges they made against Plaintiff, and they have given him no opportunity to erase the stigma the Defendants' actions have attached to him.

116.   The Defendants have accordingly deprived Plaintiff of his liberty interest in his reputation under color of law without due process, in violation of 42 U.S.C. § 1983.

**COUNT II**
**Plaintiff v. Commonwealth, OAG,**
**Kane and Duecker in their official and individual capacities**
**43 P.S. § 1421 – Pennsylvania Whistleblower Law**

117.   Plaintiff incorporates by reference the preceding paragraphs of this complaint as if set forth fully and at length.

118.   Plaintiff's report to Bruce Beemer recommending Defendant Duecker's termination constituted a good faith report of wrongdoing or waste to the appropriate authorities.

119.   Defendants terminated Plaintiff in retaliation for the good faith report he made recommending Defendant Duecker's termination.

120.   Defendants are employers as defined in 43 P.S. § 1422.

121.   Defendants Commonwealth of Pennsylvania and OAG are "public bodies" as defined in 43 P.S. § 1422.

## **RELIEF REQUESTED**

FOR ALL OF THE FOREGOING REASONS, Plaintiff requests that this Court award him the following relief:

(a) Removal of Kane and Duecker from any office or employment with the OAG;

(b) reinstatement to his position with the OAG;

(c) an award of damages to compensate him for his economic loss;

(d) an award of compensatory damages to compensate him for his non-economic losses, including impairment of reputation, personal humiliation and mental anguish;

(e) an award of punitive damages;

(f) an award of costs, including reasonable attorney fees for the prosecution of this action; and

(g) such other and further relief as the Court deems appropriate.

A JURY TRIAL IS DEMANDED.

**GREENBLATT PIERCE ENGLE
FUNT & FLORES LLC**

Dated: December 14, 2015

s/ *Patricia V. Pierce*___
PATRICIA V. PIERCE
PA 23129
Email: p.pierce@gpeff.com

LORI L. MACH
PA 77135
Email: lori@gpeff.com

NOAH S. COHEN
PA 313849
n.cohen@gpeff.com

123 S. Broad Street
25th Floor, Suite 2500
Philadelphia, PA  19109
Telephone:  215-735-1600
Facsmile:    215-735-1660

*Attorneys for Plaintiff*